ORIGINAL
FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT    OCT 1 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NO. **C 07 — 5217 CRB (PR)**

In Re )

LAVARIUS JERMAINE McCORD, )    PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, )

v. )

State of California, )
Warden of Calipatria State Prison )

Contra Costa Superior Court No.  05-032028-3
Honorable Harlan Grossman, Judge Presiding

**PETITION FOR WRIT OF HABEAS CORPUS
APPENDIX**

IVY McCRAY
Attorney at Law
Cal. State Bar No. 245927

829 - 61st Street
Oakland, California 94608
Telephone: 510-653-4900

Attorney for Petitioner
Lavarius Jermaine McCord

TABLE OF CONTENTS

|                                                                                      | PAGE |
|--------------------------------------------------------------------------------------|------|
| TABLE OF AUTHORITIES                                                                  | i    |
| STATEMENT                                                                            | ii   |
| PUNISHMENT IMPOSED                                                                   | iii  |
| PROCEDURAL HISTORY                                                                   | iii  |

**I**
HABEAS CORPUS IS A PROPER VEHICLE FOR THE PRESENTATION
OF PETITIONER'S CLAIMS ............................................................................ 1

**II**
PETITIONER REQUESTS STAY OF FEDERAL DISTRICT COURT'S
REVIEW OF THIS HABEAS CORPUS PETITION UNTIL THE
CALIFORNIA SUPREME COURT HAS RULED ON THE CLAIMS
PRESENTLY BEFORE IT ............................................................................ 2

**III**
THE COURT'S DENIAL OF PETITIONER'S MARSDEN MOTION TO
DISMISS TRIAL COUNSEL VIOLATED PETITIONER'S SIXTH
AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE COUNSEL ........... 4

**IV**
PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WAS VIOLATED BY TRIAL COUNSEL'S
INADEQUATE DEFENSE AGAINST THE CHARGES ........................... 10

**V**
PETITIONER'S RIGHT TO A FAIR TRIAL PROTECTED UNDER THE
DUE PROCESS CLAUSE OF THE 14TH AMENDMENT WAS VIOLATED
WHEN THE COURT QUALIFIED NURSE JONES AS AN EXPERT IN
SART EXAMS AND PROCEDURES AND ALLOWED HEARSAY
TESTIMONY THAT WAS UNLAWFUL ........................................... 14

**VI**
PROSECUTOR'S CLOSING ARGUMENT TO THE JURY IMPROPERLY
VIOLATED PETITIONER'S FIFTH AMENDMENT RIGHT, SIXTH
AMENDMENT RIGHT, AND FOURTEENTH AMENDMENT RIGHT OF
THE LAW WHEN SHE ARGUED NO EVIDENCE OF CONSENT WAS
HEARD ............................................................................ 18

**VII**
PROSECUTION PRESENTED FALSE AND MISLEADING EVIDENCE TO
THE JURY IN VIOLATION OF PETITIONER'S RIGHT TO A FAIR TRIAL
GUARANTEED BY THE 14TH AMENDMENT AND FAILED TO REVEAL
EXCULPATORY INFORMATION

CONCLUSION                                                                21

LEAVE TO AMEND PETITION                                                   22

                                                                          25
VERIFICATION

# TABLE OF AUTHORITIES CITED

Page

## FEDERAL CASES

| | |
|---|---|
| Brady v. Maryland   (1963) 373 U.S. 83 | 22 |
| *Donnelly v. DeChristoforo*, ( 1974) 416 U.S. 637 | 17 |
| *Griffin v. California* (1965) 380 U.S. 609 | 17 |
| *In re Hochberg* ( 1970) 2 Cal.3d 870 | |
| *Strickland v. Washington*, (1984) 466 U.S. 668 | 8 |

## STATE CASES

| | |
|---|---|
| *People v. Crandell* | 1 |
| (1988) 46 Cal. 3d 833 | |
| *People v. Marsden* | |
| (1970) 2 Cal. 3d 118 | 1 |
| *People v. Duvall* (1995) 9 Cal.4th 464. | |

## STATUTES

Penal Code

| | |
|---|---|
| section 261 | ii |
| section 289 | ii |
| section 207 | ii |
| section 211 | ii |
| section 212.5 | ii, iii |
| section 667.61 | ii |
| section 667.9 | ii |
| sections 1538.5 | 3 |
| sections  995 | 3 |

Evidence Code

section 801 (b)

## CONSTITUTIONS

| | |
|---|---|
| U.S. Const. amend V | 4 |
| U.S. Const. amend VI | 3, 8, 9, 18 |
| U.S. Const. amend XIV | 3, 14, 22 |

## MISCELLANEOUS

| | |
|---|---|
| CALJIC No. 203 | 4 |
| CALJIC No. 10.65 | 18 |

## STATEMENT

Petitioner presents this writ to exhaust state remedies for federal habeas corpus purposes. Petitioner was convicted in Contra Costa Superior Court in 2004 of forcible rape (Penal Code section 261, subdivision (a)(2)); one count of forcible sexual penetration (section 289, subdivision (a)(1), one count of kidnaping (section 207, subdivision (a)), and one count of second degree robbery (sections 211 and 212.5, subdivision (c)).

An enhancement was alleged to each count: that the victim, Jane Doe, was blind and petitioner knew or should have known of the disability, (section 667.9, subsection (a). In addition, petitioner was charged pursuant to section 667.61, subdivisions (a) and (d) in each count that Jane Doe was kidnaped and the movement substantially increased the risk of harm to her over and above the risks inherent in the particular crimes. (CT 70-72)

Petitioner was convicted without testifying or presenting any witnesses on his behalf. The state produced several witnesses, four police officers, a DNA lab technician, a registered nurse, a SART nurse, a taxi driver, bus driver, teacher/counselor, a custodian, a passenger witness, and Jane Doe, who was nineteen years on January 16, 2003, when the alleged incidents occurred at Contra Costa Community College in San Pablo, California. The recall of events are Jane's Doe's version, and Jane Doe's alone. They are too inconsistent to sort and therefore are provided in Exhibit 12 for the reader to decide the veracity of her statements.

The deadlock jury deliberated for two and one days, ultimately finding petitioner guilty of counts one through four, and guilty of the lesser offenses for

ii

## POINTS AND AUTHORITIES
### ARGUMENT

I

## HABEAS CORPUS IS A PROPER VEHICLE FOR THE PRESENTATION OF PETITIONER'S CLAIMS

The claims asserted in this petition is that the petitioner was deprived of his constitutional right to the effective assistance of counsel. This constitutional claim cannot be presented as strongly on appeal as it is herein because its factual basis rests in part on evidence in addition to that contained in the record on appeal. See In re Hochberg ( 1970) 2 Cal.3d 870. Although habeas corpus cannot serve as a second appeal, denial of the right to counsel is a claim recognizable on habeas corpus whether of not it was raised on appeal. Id. Because trial counsel failed to bring evidence or perform adequately at trial some of the merits of the following claims were not developed at trial.

II

## PETITIONER REQUESTS STAY OF FEDERAL DISTRICT COURT'S REVIEW OF THIS HABEAS CORPUS PETITION UNTIL THE CALIFORNIA SUPREME COURT HAS RULED ON THE CLAIMS PRESENTLY BEFORE IT

This petitioner contests the legality of the judgment of conviction and sentencing order entered in People v. McCord. Petitioner has filed a writ of habeas corpus with the California Supreme Court on grounds that constitutional errors were not addressed in his appeals before the First Appellate Division or the California Supreme Court. Petitioner requests the United States District Court stay its review of this writ until the California Supreme Court has ruled.

count five.  The jury found true the allegations pursuant to section 667.61 as true

to each of the counts.

## PUNISHMENT IMPOSED

Petitioner is presently serving a life sentence in Calipatria State Prison,

Calipatria, California.  He was sentenced to a prison term of 26 years, receiving 25

years to life for one count of rape to life  to the One Strike sexual offense

sentencing requirement of section 667.61, subdivision (a) and (d)(2).  For the

enhancements, the court imposed a one year consecutive sentence on count one.

For counts two and three, the court imposed a concurrent mid-term of six years.

Sentence on court four was stayed pursuant to section 654.  The imposed for

count five for grand theft a sentence of two years to run concurrent, and set aside

the petty theft verdict.  (RT 996-1001).

## PROCEDURAL HISTORY

Petitioner filed an appeal of his conviction.  On April 27, 2006, the First

District Court of Appeal, Division Five affirmed the judgment.  Petitioner filed for

Review before the California Supreme Court on June 6, 2006.  It was denied on

July 12, 2006.  Petitioner filed this Writ of Habeas Corpus in the California

Supreme Court on July 12, 2007.  The matter is pending.

iii

III

## THE COURT'S DENIAL OF PETITIONER'S MARSDEN MOTION TO DISMISS TRIAL COUNSEL VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE COUNSEL

Petitioner filed a motion requesting removal of his court appointed counsel

prior to the trial date of June 21, 2004. The court granted petitioner a hearing on

June 16, 2004, to explain the basis of his contention and to relate specific

instances of the attorney's inadequate performance in accordance with People v.

Marsden, (1970) 2 Cal.3d 118.

Petitioner explained that he and counsel have not discussed details of his

case; that counsel had repeatedly delayed the trial; he was unaware of any

development in finding witnesses or suppression motions. (Exh 1). The court

record shows that counsel had continued the trial two times successfully (Exh

2;CT 76-81; 84-89; 91-99 ). Counsel cited in his declarations to the motions how

unprepared he was, his lack of experience with the matter of the case, his need to

further investigate.

"A defendant  is entitled to relief if the record clearly shows that the

appointed attorney is not providing adequate representation or that defendant and

counsel have become embroiled in such an irreconcilable conflict that ineffective

representation is likely to result. People v. Crandell  (1988) 46 Cal.3d 833

After inquiry of counsel regarding his trial experience, and hearing statements

of petitioner, the court ruled that petitioner had not met his burden even though the

court had heard prior the hearing of the motion that counsel still was not prepared

2

for trial the next week.

The denial of the motion to remove counsel was an abuse of discretion. It was foreseeable that counsel may be successful standing before a judge and jury and argue a case based on trial skills, but to be successful at defending a client, counsel had to have done significant pretrial work to develop an adequate defense. The court had no reason to believe the appointed counsel was ready for trial when it had heard directly from counsel that he was not.

The assessment of how trial counsel would perform was apparent from his motions to continue. (Exh 1)  Trial counsel did file suppression motions under Penal Code sections 1538.5 and 995 on May 11, 2004, one day after filing a third motion to continue in order that the motions could be heard prior trial. It was apparent that counsel was hard pressed for time.  The motions were heard during trial trailing.

Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would substantially impair the defendant's right to assistance of counsel. Petitioner listed and stated clearly the reasons he felt his counsel was not performing after six months, and cognizant the he faced a life sentence.

A continuance of the trial briefly for petitioner to retain private counsel that would have far more obligations of due diligence than displayed by his present counsel after six months. The denial was a violation of petitioner's constitutional right to have affective assistance of counsel. This denial prejudiced petitioner at trial and he would have received a more favorable result had the Marsden motion

3

been granted.

The trial record shows counsel was not prepared in defending the charges. There was a failure to call any witnesses to impeach Jane Doe; failure to have his investigating officer appear, failure to retain expert witnesses; failure to establish the chain of custody for physical evidence and seek its exclusion, failure to confront the lab who analyzed the DNA from Jane Doe; his advice to petitioner to remain silent, failure to understand the admissibility of rape trauma testimony, and failure to object to the prosecution's closing arguments on consent.

The court's decision to deny petitioner the right to dismiss trial counsel, aware that counsel was unprepared for trial at such a late date violated petitioner's constitutional right to affective assistance of counsel under the Sixth Amendment of the United States Constitution. The court's abuse of discretion in determining petitioner had not met his burden to remove counsel violated his due process of law under the Fourteenth Amendment because the court failed to determine whether trial counsel would be adequate to defend the case. The court base its decision on prior experience without assessing the present situation. It is apparent that more trial preparation for petitioner would have had a different effect on the deadlock jury.

## IV

**PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY TRIAL COUNSEL'S INADEQUATE DEFENSE AGAINST THE CHARGES**

Trial counsel's professional standard was below a reasonable standard in the

4

preparation and defense of petitioner. Petitioner was prejudiced by the conduct of

trial counsel and if not for such conduct, it is reasonable to believe he would not

have been convicted of the charges. Trial counsel's ineffective assistance of

counsel is stated below in each instance.   It is not exhaustive of the record.

   1. Trial counsel failed to file a suppression motion regarding the taped

interview of petitioner with Officer Sharp dated February 22, 2003. Counsel 's

arguments at the hearings to suppress evidence were limited to blood and saliva.

There is no argument regarding the taped interview. (RT 1-146)

   The court admitted the videotape after an evidentiary hearing at trial and

gave CALJIC No. 2.03 instruction to the jury regarding "consciousness of guilt"

because the videotape of petitioner contained inconsistent statements to proof at

trial. Petitioner should have been afforded the right of a hearing to confront the

voluntariness of the videotape that was a violation of his Fifth Amendment right to

remain silent. It would have allowed counsel to question Officer Sharp on any

preliminary discussions prior the taping and assess petitioner's ability to testify on

his behalf.

   2. Trial counsel's discovery was limited or inadequate.   The record reflects

no potential witness list filed for the trial. There apparently were some subpoenas

served, but no witness called.   At one point counsel asked leave of court to have

his investigator Ed Oasa sit through witness testimony. (RT 284-285) It was

denied because he had not properly noticed the prosecution regarding discovery. It

is not clear if trial counsel had time to notice any discovery, having less than six

weeks to prepare for trial.

Mr. Oasa was never called to testify regarding his investigations. Counsel did not retain any witness to defeat the evidence gathered by the DNA technicians regarding the evidence introduced at trial, nor confronted the original lab tech on her analysis of the data.

3. Trial counsel did not locate and subpoena potential exculpatory witnesses such as Ed Docto[1], Stan Porter, Officer Skeen, Officer Milano. All are known to have talked with Jane Doe shortly after the incident for several hours at the college campus. Investigation of these individuals would have refuted the claim of "rape trauma" as suggested by Officer Sharp (RT 438:9; RT 611:18-19).[2] and Louise Jones, the SART nurse at trial.

4.    A very important witness, Shayla Gustafson was never interviewed by the defense. [3]   (Exh 3) It was not evident from the record or file whether the state had given counsel reports that Officer Sharp had located this witness to whom he spoke to personally (RT 588-589). It is apparent that it may have been more exculpatory than revealed. This witness had a ten minute conversation with Jane Doe prior her alleged abduction according to Jane Doe's timing of the events.

---

[1] Ed Docto has given a statement to petitioner's attorney that he assisted Jane Doe by allowing her to use his telephone, gave a stick off a mop so she could walk around, assisted her to the ladies, as well as allowed her to use his cell phone to call her carrier. She showed no signs of pain or emotional distress.

[2] An objection was made but overruled.

[3] Petitioner has send a letter to the last known address on 6/17/07. it has not returned as of yet.

5. Trial counsel neither secured independent medical testimony to repute the findings of SART nurse, Louise Jones who alleges the injuries suffered by Jane Doe were from rape, and not menstruation.   Nor did trial counsel subpoena the medical/ hospital records of Jane Doe to determine whether Jane Doe was sutured, released with medications, who the physician that the SART nurse supposedly conferred with regarding the exam.

6. Trial counsel failed to investigate Jane Doe on the night of the incident.

    a. No evidence was brought out in trial that she may not have been at the School of the Blind as she states repeatedly that night.   Attached is a letter requesting that information. (Exh 4).   It differs from Jane Doe's testimony that she took the BART from the school.  (RT 79)

    b. On the date of the alleged incidents, Jane Doe was a registered student at Contra Costa Community College.  Whether this information was given to the defense, it is not clear from the file or record.  Nor was it developed during examination of Nancy Phinnesse, the skills center teacher/ counselor.  (Exh 5). This information if it had been presented to the jury could have been mitigating, that in fact she may have even suggested the location for a walk.  She may have been familiar with the grounds having walked there for classes.  The college is a short distance from her residence.

    c. It is noted that Jane Doe had a boyfriend, but no investigation was done whether he was with her on the date of the incidents.

7. Trial counsel failed to develop the time of the incident which was crucial

7

to the charge of kidnap and rape. To travel by BART from Fremont to Del Norte El

Cerrito is a 40 to 50 minute ride which would have put Jane Doe exiting the BART

at 10:50 p.m. Per testimony that she was checking messages after the cab ride,

and per the phone bills entered into evidence at 11:02 p.m. There is a call at

12:15 which Jane Doe makes to her friend, Shayla Gustafson in Southern

California. She talks for 10 minutes. Jane is ultimately found by a custodian on

the campus after 1:30 a.m.    Development of this information would have

defeated a charge of kidnapping.

   8. Counsel's preparation of a defense was defective in strategy

     a. Client complained of the difficulty in communicating with counsel

regarding trial strategy and defense.   Trial counsel wanted to introduce petitioner's

prior sexual conduct with girlfriends  to argue the possibility of rough sex, or

petitioner's physical attributes. Petitioner was rightly uncooperative. (Exh 6) These

factors would not have mitigated the injuries.  Trial counsel should have retained

expert witnesses to support Jane Doe could have been menstruating and objected

to the potential altering of the evidence.   Counsel avoided developing the blood

evidence.   No one ever asked Jane Doe how she determines when she is

menstruating. For many women it is a sight revelation.

     b.   Counsel convinced petitioner that it would not be in his best

interest to take the stand because it is more probable that Jane Doe would not be

believed due to her inconsistencies about the events, and his prior arrests would be

introduced to impeach him as a credible witness.

8

This advice was harmful to petitioner.   Counsel argued that the two had consensual sex to the jury but consent has to be heard.  (Exh 7)

9.  Trial counsel failed to object to the prosecution's closing argument that trial counsel did not present any evidence of consent.  It was reasonable to infer that prosecution was intimating at petitioner's silence.  Counsel failed to object to the reference.   Consent is not a alibi, or witness, or physical evidence.  It is speech by parties involved.

10.  Trial counsel did not request an full evidentiary hearing regarding the admission of the clothing of Jane Doe on the grounds they were potentially altered.  He did object to the admission of the underwear and that there was problem with the chain of custody of the clothing. (RT 738 -739)  However, counsel did not argue that the evidence was not what it purported to be on the night of the crime and should not have been presented to the jury as such.

In analyzing an ineffective assistance of counsel claim, the overriding concern is to determine whether counsel's conduct so undermined the functioning of the adversary process that the trial cannot be relied upon as having produced a just result per Strickland v. Washington, (1984) 466 U.S. 668.

The two prong test is whether counsel was unreasonable unprofessional at trial, and the results prejudiced the defendant.  It is unreasonable to defend against rape without testimony by the accused.

It is unreasonable for counsel not to obtain witnesses, or evidence to defeat the charges, if petitioner was not to testify.  To depend on impeachment of the

9

state's witnesses alone, failing to object, and waiving or forfeiting opportunities to

object is deficient and the result was that petitioner is serving a sentence of 26

years. Petitioner's Sixth Amendment right to affective assistance of counsel was

violated by the poor performance of trial counsel. His conviction should be

reversed.

**V**

**PETITIONER'S RIGHT TO A FAIR TRIAL PROTECTED UNDER THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT WAS VIOLATED WHEN THE COURT QUALIFIED NURSE JONES AS AN EXPERT IN SART EXAMS AND PROCEDURES AND ALLOWED HEARSAY TESTIMONY THAT WAS UNLAWFUL**

Petitioner filed a motion in limine to deny certification of Louise Jones to

testify as an expert at trial. (CT 203; Exh 8). Petitioner believed she was not

qualified to examine Jane Doe without supervision of a physician can could not

make medical findings that were essentially stated as medical diagnosis by her.

During the hearing of petitioner's motion, the court was cautious to limit her

qualifications as an expert only to

COURT: I am going to permit, based on what has been stated to the court, to permit Ms. Jones to testify as an expert in the field of conducting of sexual assault exams and procedures to be followed in the conducting of sexual assault exams. (RT 22-26)

Based on speculation that there were other medical personnel at the hospital that

Nurse Jones consulted with to comply with the law, the court qualified the nurse

as an expert.

Court: In terms of were there other medical personnel that examined the victim.

10

A: No, I don't believe..she was not working with the requirement, but she did the examination herself. I will see if she has a CV. (RT 14:2-7)

Court...I have no reason to doubt that Ms. Jones as a sexual assault forensic examiner works a the Regional Medical Center in Martinez was consulted by a physician. And I see no basis whatsoever for excluding her testimony. Ms. Santos has said that she doesn't believe that she would be offering Ms. Jones as an expert.

Ms. Santos:...I said I wasn't necessarily going to ask her that specific question of whether or not the injuries that she observed on Jane Doe were consistent with her allegation. ...I do intend to qualify her as an expert to conduct these examinations. (RT 24:26- to 27:17 )

When question who the doctor to whom she consulted, she could not remember the name, but states it may be found in the medical chart (RT 348:15). In fact, the doctor never came into the examination room per the testimony.

> Q: Did you also pass this information on to any type of doctors?
> A: Yes
> Q:... there is a doctor that, in fact, you were working under the auspice of?
> A: Yes

> Q: Was this the case with Jane Doe
> A: Yes. The physicians, I communicate directly with them.
> (RT    270:1-10)

Petitioner's right to due process was violated when Nurse Jones did in fact testify beyond the scope of her qualification as a SART nurse who as such was to inform the jury of the procedures taken to examine a person who alleges sexual assault. Nurse Jones then went on to discuss what Jane Doe told her regarding the alleged assault.

> A: .. I wrote..."he hit her head on the wall or my head on the wall."
> (RT 332:2-5)

> Q: Did Jane Doe describe for you any way in which she as held down.

11

A: Yes, she did
Q: What did she describe for you??
A: ...he held her should down to the grown with one hand.
(RT332:8-28)

Q: ...consistent with history

OBJECTION

COURT: ...found is qualified to conduct these examination and
qualified to testify as an expert with respect to the conducting of the
exams...not a doctor and cannot diagnose, but I believe ...is qualified
to testify to her finding and whether or not in her opinion they are or
are not consistent. So overruled. (RT 334:8-21)

There is no evidence to support Nurse Jones worked in collaboration with a

physician.   There is no scientific data upon which relied to come to her medical

opinion that Jane Doe had been sexually assaulted.  On cross examination she

admitted that she was not qualified to diagnose (RT 336:20-26); that she only took

one week course in SART examinations; and could not find sperm on the slide

prepared from a sample from Jane Doe's vaginal canal.

There was an issue to the blood that was found in Jane Doe's clothes.

Nurse Jones offered hearsay on the issue of Jane Doe's menstruation.

Q. Was Jane Doe menstruating
A. No. She stated she wasn't.
(RT 249:16-17)
Counsel Object on Hearsay grounds. Moves to strike
Court: Is it being offered for the truth of the matter?
Santos: Not by that means
Court: . I will permit that the statement attributed to Jane Doe that she was
not menstruating at the time of the cam may be considered by this witness.
(RT 249:19-28)

..you may consider it as it enables this witness to---- as it relates to her state

12

of mind or her observation, things of that nature, but not for the truth of the matter. (RT 250:1-5)

Q. Did you have any evidence that she was menstruating
A. No

Counsel: I would object to that. Beyond the scope of this witness' expertise.

Court: Well, int the training you have received conducting these exams, do they cover the issue of menstruation?

The Witness: It was discussed in class, yes. That—

The Court: It is covered in your—

The Witness: Yes. What to do if they are. (RT 250:14-27)

There is no explanation as to whether she could tell if Jane Doe was menstruating or not. She does not explain what is to be done. She does not emphatically state that Jane Doe was not menstruation. Leaving speculation that she was not. Nor does she qualify whether she ever worked with a  patient with blood.

Nurse Jones testimony as an expert on whether her findings supported rape, was a violation of petitioner's due process to a fair trial under the 14th Amendment of the U.S. Constitution. Her taking photos and history of the patient did not qualify her to determine that the blood found in Jane Doe's clothes were the result of physical trauma. Nor could she state that Jane Doe was assaulted as she did. Her testimony was based on hearsay that prejudiced the petitioner.

One juror passed a note to the court requesting the following question: "Did Jane Doe tell nurse the person choked her or strangled her." (RT362:4-28) The

13

answer to such would be hearsay.  The answer is well outside what Nurse Jones
was qualified to testify at trial.

Petitioner's right to a fair trial was violated when the court allowed
cumulative hearsay from Nurse Jones.  Nurse Jones did not base her conclusions
on scientific medical opinions well grounded in the medical community.  Her
opinions were anecdotical opinions, based on case by case and personal knowledge
and opinions.  California Evidence Code section 801(b) allows a potential expert
who has special knowledge, skill, experience, or training to rely on things personally
known or perceived to form an opinion upon the subject...unless an expert is
precluded by law from using such matter as a basis for his opinion.

The testimony was inadmissible and highly prejudicial and contributed to the
conviction of petitioner.  It was not harmless error to allow such testimony.
Prosecution argued in closing that Jane Doe had "internal injuries", and that "...the
nurse...said she wasn't on her period.  (RT 826: 10-11)   This violated petitioner's
due process of the Law under the Fourteenth Amendment.

## VI

**PROSECUTOR'S CLOSING ARGUMENT TO THE JURY IMPROPERLY VIOLATED
PETITIONER'S FIFTH AMENDMENT RIGHT, SIXTH AMENDMENT RIGHT, AND
FOURTEENTH AMENDMENT RIGHT OF THE LAW WHEN SHE ARGUED NO
EVIDENCE OF CONSENT WAS HEARD**

The prosecutor argues that to prove lack of consent by Jane Doe it had only
to be against her will.  " She is not required to fight.  She is not required to even
say "I don't want to do it."  If it's against her will, that's what's required for the

14

crime of rape. (RT 813:22-26)

How does one interpret the will of another without some sort of expression. Nonetheless, it is obvious that Jane Doe claimed petitioner had sexual intercourse with her without consent. If she said otherwise the entire trial would not have happened. There would not be a crime.

What is problematic is that consent is an agreement. It is a verbal statement that one assents to the conduct of another. The prosecutor argues to the jury that

"... sexual assault is a very personal crime. It's not the crime of....crime like a robbery where people are on the street and they see it. I don't think I've heard...ever heard when it was somebody's mother or father or daughter or son watching. It is not that the type of a crime." (RT 816: 23-28)

Therefore as a reasonable objective persons on a jury, weighing the evidence and facts before them. They expect to here a verbal exchange to some extent regarding the incident. The prosecutor argues "First of all – and let me remind you, al that testimony is evidence. You've got a lot of things just through someone saying it." (RT 821:11-13)

"But 'Jane' knows, and 'Jane' said she didn't know this man. She didn't agree to have sex with this man. She didn't agree to go to the college campus with this man, and you have no evidence that suggests otherwise. None." (RT 823:27-28;824: 1-3)

The statement emphasizes the fact that only one person is testifying regarding the encounter and she says it was not consent. However, consent is a defense to forcible rape. The burden of persuasion is on the accused by his testimony to prove that he acted with an understanding of agreement to the act of

15

sexual intercourse.

The prosecution's insistence there was no consent testimony repeatedly pointed to the fact that the petitioner did not take the stand to refute Jane Doe's version of the story. "...you don't have evidence that anything else happened to 'Jane' other than what 'Jane" said happened to her." (RT 846: 8-10) This was a violation of petitioner's Fifth Amendment right to remain silent.

The prosecution hides behind the name of defense counsel, though it is obvious she is referring to petitioner. A prosecutor can comment on the accused's lack of alibis or evidence, but in this case, the evidence that was required for consent was testimony. As the prosecutor so stated above, sexual intercourse where others are observant rarely happens. (RT 816:23-28)

She states as follows:

> "One of the things I believe Mr. Ahearn is going to stand up and again argue to you, that this was a consensual encounter even though there's no evidence of that. (RT846 28;847:1-2)

> "Mr. Ahearn is going to stand up and argue to you, I think—unless he changes his defense from opening statement....'She content (sic) to this." (RT:848:21-28;849 1-2)

> "You have nothing in the evidence to suggest that she agreed to anything that took place. " (RT:882:7-8)

> "She did not consent to go for ten minutes. She was not going for a walk. You have no evidence of that. None. Zero." (RT:884: 3-5)[4]

> "There's no evidence to support the suggestion that he did not kidnap

---

[4] An objection was raised by trial counsel that this information was in the audiotape of January 22, 2007 played to the jury.

16

her, that he did not compel her to go with him against her will. "
(RT: 884:27-28; 885:1)

The prosecutions' reference to that no consent was given inferred he should have spoken to defeat Jane Doe's claim, otherwise it was an adoptive admission. Her comments violated petitioner's Fifth Amendment right to remain silent as stated in <u>Griffin v. California</u> (1965) 380 U.S. 609.

One juror who did not believe Jane Doe's version of the events, or the testimony of the investigating officer, and who held out with her lone vote against conviction, changed her decision, because no consensual evidence was presented to the trial.   A letter regarding her post trial interview states the name of Mr. Ahearn as not producing consensual evidence. But who could Mr. Ahearn produce to prove consent. The petitioner. (Exh 7)

The prosecutor's remarks sufficiently infected the "trial so as to make it fundamentally unfair, and, therefore, a denial of due process". <u>Donnelly v. DeChristoforo</u>, ( 1974) 416 U.S. 637.

The prejudice from this error was compounded when the court refused to instruct on petitioner's jury instruction CALJIC No.10.65 violating petitioner's due process of law.   Any admonishment or jury instruction by the court regarding petitioner's silence could not cure the prosecution's violation of petitioner's constitutional right.

There is no evidence that trial counsel objected to the inferences, and thus reflects ineffective assistance of counsel as guaranteed by the Sixth Amendment of

17

the U.S. Constitution.    A reversal of the state conviction is required.

## VII

## PROSECUTION PRESENTED FALSE AND MISLEADING EVIDENCE TO THE JURY IN VIOLATION OF PETITIONER'S RIGHT TO A FAIR TRIAL GUARANTEED BY THE 14TH AMENDMENT AND FAILED TO REVEAL EXCULPATORY INFORMATION

The prosecution entered into evidence the clothing that Jane Doe allegedly wore in the early morning hours of January 16, 2003.  They were a jacket, a sweater, jeans, shoes, and under bra, and underwear.  The prosecution fosters testimony through various witnesses what the chain of custody was for the clothing.   First there is testimony from Nancy Phinnesse, Jane Doe's teacher and counselor who drove Jane to the hospital early that morning.

A: ...and she bagged each item as Jane Doe took it off, and labeled it.
Q: Did you watch the nurse as sh gathered this clothing and put in the bags as you just described
A: Yes, I did.
(RT:137:4;139:19)

On cross examination, Ms. Phinnesse states "...the emergency room nurse gathered the clothes..., gave her a robe to wear...(RT:141:27-28).  The prosecution questioned Ms. Jones, the SART nurse regarding the clothes, " And in a case of a sexual assault of an adult female, is the female clothing collected. " She answered "It varies. In this case the police took all the clothing." (RT.238:20-22)

The prosecution continues with questions to Officer Sharp, the investigating officer from Contra Costa Community College.

Q: At some point during your visit to the hospital, did you take possession of any underwear that Jane Doe, "Jane", may have had on?
A: Yes

18

(RT 438:19 to 440:5)

Prosecution then asks about the contents of the Jane Doe's jacket. Sharp answers to the bus tickets, "These are the items I removed from the victim's pocket. (RT511:2; 515:25) Defense objects to the testimony that the transfer may have dates on them and would be considered hearsay. The court ruled in his favor which closed the door on impeaching the officer regarding one of the transfers having a January 19, 2003 date on it. (Exh 9) The prosecution politely ended its direct. The objection without knowledge of the ticket was a strategic error on the defense, and implies that the defense had not reviewed the state's evidence prior trial. This information of a post dated bus transfer should have been reported to the jury.

Trial counsel, awakened to his mistake gets Officer Sharp to admit that he got the jacket on January 17, 2003 at 5:20 p.m.. Still this is incorrect because the bus transfer ticket was dated January 19, 2003. (RT 543-544) Even the jury was concerned about the chain of custody of the clothing and in one of a series of notes which the court allowed to be presented to the prosecution or defense during the trial. The following occurred.

Court: For the record, Juror No. 12, I did take the note. I took it. I did not want you to think that anybody else took it. Before we play the videotape, if you wish, you can follow up on ay of the questions presented.

Ms. Santos: Yes
Q: Detective Sharp, when Jane Doe's clothes were collected at the hospital on January 16th, you testified that you delivered them to the crime lab ten days later on the 26th. Was there any–what happened to the clothing in the interim, sir?
A: They were stored in our evidence.

19

Q. In your evidence bureau?

A: Yes

Q: Was there any particular reason why it was— well, that the 26th was the day you took the clothes to the crime lab?

A: The only delay was – mostly was I wanted to make sure the panties were completely dried before we — they were repackaged and submitted. (RT 604-605)

It seems to be of no importance to defense to ask, what did Jane Doe wear home if all her clothes were taken at the hospital.    The post dated ticket implies that the clothing was not collected then,  and may not in fact be the bloody underwear or jeans from that night. The injuries described by Nurse Jones, a small cut, an "abrasion inside the vaginal wall does not reflect the heavy blood stain in the pants.  The evidence as presented may have been tainted and their admissibility as the true items that Jane Doe wore that night were at issue.   The court admitted the clothing over defense's objection. (RT 738-739).

Days later, the prosecution argued internal injuries to the jury in closing.  But more revealing was her statement that the clothing was provided to the police by Nancy Phinnesse, Jane Doe's counselor contrary to the testimony previously given by Ms. Phinnesse, the SART nurse and Officer Sharp.  She states "And the clothes were taken to her and given to the police. And that's the main reason why she (Nancy Phinnesse-skills counselor) testified. (RT 825:24-28;826:1-3); " But for Ms. Phinnesse, you never would have seen the clothes." (827:3-4)

The prosecutor withheld this information from defense and attempts to rectify it in closing by stating how the clothes may have actually been gathered. Prior knowledge of the information would have impeached her witnesses, and made

20

the evidence suspect. This was critical exculpatory evidence that the clothing may

be other than what it purported to be on the night of the alleged incidents.

The bloody underwear and pants were admitted to demonstrate that the

blood stains represented physical injuries to Jane Doe, the after marks of trauma. [5]

(Exh 10) The chain of command is crucial to the possibility that evidence has been

tampered with in this case.[6] The prosecution withholding this information fostered

false testimony and mislead the jury. This was a violation as held in Brady v.

Maryland (1963) 373 U.S. 83, and petitioner's 14th Amendment right to have a fair

trial. The introduction of this potentially altered evidence alone necessitates the

overturning of petitioner's conviction.

## CONCLUSION

Petitioner was a young man of nineteen when he met Jane Doe. They were

of the same age and similar cultural background. They had things in common, she

lived in a school for the blind most and raised by her grandmother. He too had

---

[5] Petitioner's attorney observed the blood stain in the pants. The blood soaked through the dark jeans to the point there is a shading of brown/red coloring. The stain goes down each pant leg from the crotch approximately 2 inches on each leg side and up the back seam for about 3 to 4 inches.

However the underwear, though there is some deep blood stain, tends to have a water impression to them as if the blood was mixed with another fluid, at first, could it have been semen, but the testimony is there is no ejaculation, little sperm found. The second thought is that the blood has been rinsed from the underwear to defeat the impression that the woman had her period, and the blood is a result of minor physical injuries.

[6] The probationer's report states " Police recovered the victim's blood soaked panties and found men's clothing, including an "old navy" shirt in a nearby men's bathroom, is also false. (Ct 536:4)

21

been raised by his grandmother.  Petitioner is now serving a life sentence, 26 years, based on Jane Doe's interpretation of the events.   She states in the probation report, she hoped petitioner goes to prison for the "rest of his life".

Counsel's advice to petitioner to waive his right to speak was poorly given when the strongest defense to rape is consent,  that she did give petitioner a reasonable belief that she was attracted to him.  Petitioner faced several police officers, lab technicians, a nurse, and other salient witness for a crime committed on a community campus that drew local media. When Jane Doe complained, an arrest conviction had to be made.

His defense to all this—nothing, except an audio tape of Jane Doe. Impeachment of Jane Doe's inconsistency as the only defense was poor advocacy. Petitioner's defense was inadequate because trial counsel was not prepared and knowledgeable of the criminal matter.

It is a matter of justice that petitioner's sentence of with special enhancements  be overturned.  Petitioner requests that the court acknowledge his trial had fundamental errors,  too cumulative to state herein but those that were raised did violate petitioner's constitutional rights to a fair trial.  Therefore issuance of a writ of habeas corpus is just.

### LEAVE TO AMEND THE PETITION

Petitioner's counsel has attempted to gather evidence in a very short time period, less than three months.  Faced with a imposing deadline to file a brief, it is has been difficult to obtain evidence to support the allegations herein without

subpoena power, to obtain may records that petitioner alleges still exist.

Petitioner alleges that the prosecutor knows the whereabouts of Shayla Gustafson and has other information that was discussed with Jane Doe on the night of the alleged rape. Petitioner alleges that Jane Doe was not at the School for the Blind on January 15, 2003 as she testified.

Petitioner has sought to interview witnesses Dechanti Williams to determine the time that Jane Doe was seen leaving the BART station and Arminta Harris regarding the time she departed to establish that the time from the cab ride to the time Jane Doe was found was significant and supports that Jane Doe provided false testimony. The witnesses refuse to cooperate with petitioner's attempt to provide declarations regarding the allegations herein. Examination of the physical evidence and medical testimony as to the findings of Jane Doe should be re-examined.

Petitioner seeks leave to amend the petition to conform to proof at an evidentiary hearing after full discovery rights pursuant to People v. Duvall (1995) 9 Cal.4th 464. ("where access to critical information is limited or denied to one party, where it is unreasonable to expect a party to obtain information at the pleading stage, or where the proper resolution of a case hinges on the credibility of a witnesses, the general rule requiring the pleading of facts should not be enforced in such a draconian fashion so as to defeat the ends of justice".)

23

WHEREFORE, petitioner respectfully prays:

1. That this court take judicial notice of the record on appeal in People v.

McCord, Case No. A108457 and Superior Court of Contra Costa County Case No.

05-32028-3, *and incorporate arguments raised by petitioner on pages 24a, 24b, and appellant counsel as in Exhibit 13 of Appendix*.

2. In the interests of justice, review the testimony and the additional

evidence contained in the Exhibit Appendices filed concurrently in support of this

petition;

3. Grant petitioner leave to amend the declarations submitted should the

court find that excusable grounds for delay in filing the habeas petition have not

been met on any of his claims;

4. Issue an Order to Show Cause to inquire into the legality of petitioner's

claims herein;

5. Set aside petitioner's conviction; or

6. Alternatively, remand to the lower court, and after an evidentiary hearing,

wherein petitioner is allowed to subpoena evidence and witnesses and take

testimony, issue a writ vacating petitioner's judgment of conviction; and;

7. In the interest of justice, grant petitioner such other and further relief as

the Court may deem proper.

Dated:                                  Respectfully Submitted;

                                        Ivy McCray, Attorney for
                                        Petitioner Lavarius J. McCord

24

## VERIFICATION

Ivy McCray declares as follows:

I am an attorney admitted to practice law in the state of California. I have been retained by petitioner to prepare this writ of habeas corpus.

I make this verification because petitioner is incarcerated at the California State Prison in Calipatria, California, which is outside the county in which my office is located, and because the matters stated in the petition for writ of habeas corpus are more within my knowledge than his.

I have read the foregoing petition for writ of habeas corpus, and declare that the contents of the petition are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _11_ day of _October_ at Oakland, California.

Respectfully submitted,

Ivy McCray
Attorney for Lavarious Jermaine McCord

## CERTIFICATE OF WORD COUNT

I, Ivy McCray, attorney for petitioner certify the word count for this brief is approximately 3, 809 words.

Ivy McCray
Attorney at Law

## CERTIFICATE OF SERVICE BY MAIL

I, Ivy McCray, declare:

I am an active member of the State Bar of California. I am not a party to the within action. My business address is 829 - 61st Street, Oakland, California 94608. On the date stated below, I deposited in the U.S. mail at Oakland, California, the following document(s):

Petition for Writ of Habeas Corpus

Appendix

I placed the above stated document(s) in a sealed envelop with prepaid postage thereon, and addressed as follows:

Attorney General of California
455 Golden Gate Avenue, Suite 1100
San Francisco, CA 94102-3664

District Attorney,
Contra Costa County
P.O. Box 670
Martinez, CA 94553

Clerk, Contra Costa County
for Delivery to: Judge Harlan Grossman
P.O. Box 911
Martinez, CA 94553

Lavarius J. McCord, CDC -62318
Calipatria State Prison
P.O. Box 5007
Calipatria, CA 92233

Warden, Calipatria State Prison
7018 Blair Road
Calipatria, California 92233

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and executed at Oakland, California on October 11, 2007

Ivy McCray
Attorney at Law