IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVARIUS JERMAINE MCCORD, | No. C 07-05217 CRB |
| Petitioner, | **MEMORANDUM AND ORDER** |
| v. | |
| WARDEN OF CALIPATRIA STATE PRISON, | |
| Respondent. | |

Petitioner Lavarius Jermaine McCord was convicted by a jury of forcible rape, forcible sexual penetration, kidnapping, grand theft, and the special allegation that the victim was blind and petitioner knew or should have known of the disability. The trial judge sentenced petitioner to 26 years to life. Now pending before the Court is his petition for writ of habeas corpus. After carefully considering the record, and the parties' written submissions, the Court DENIES the petition.

## BACKGROUND

Petitioner was charged with kidnapping and raping Jane Doe, a 19-year old blind woman, on the night of January 15, 2003. The trial evidence showed that on that night an uninvited man rode in a cab with the victim, and when she exited the vehicle he followed her, dragged her to a nearby college campus, raped her twice, and took her cell phone and white cane. Petitioner was identified by several witnesses who had seen him with the victim earlier

that evening, and DNA evidence connected him to the crime.

Petitioner was convicted by a jury in July 2004, and the California Court of Appeal affirmed the conviction. After the California Supreme Court denied review petitioner filed a writ of habeas corpus in the California Supreme Court. The Supreme Court summarily denied the petition and petitioner subsequently timely filed the petition for writ of habeas corpus presently pending before this Court.

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ( 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In general, a federal habeas court is "highly deferential" to the rulings of the state courts and grants them "the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citation omitted).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000 ). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

2

1  A federal habeas court making the "unreasonable application" inquiry should ask whether the
2  state court's application of clearly established federal law was "objectively unreasonable."
3  Id. at 409.

4  The only definitive source of clearly established federal law under 28 U.S.C.
5  § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of
6  the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).
7  While circuit law may be "persuasive authority" for purposes of determining whether a state
8  court decision is an unreasonable application of Supreme Court precedent, only the Supreme
9  Court's holdings are binding on the state courts and only those holdings need be
10 "reasonably" applied. Id.

11 If a federal court determines that a constitutional error has occurred, the court must
12 also find that said error "had substantial and injurious effect or influence in determining the
13 jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v.
14 United States, 328 U.S. 750, 776 (1946)). Essentially, the petitioner must prove that any
15 such error resulted in "actual prejudice." Id.

## DISCUSSION

17 Petitioner's primary argument is that he was denied the right to counsel. First, he
18 contends the state court erred by denying his Marsden motion for a new court-appointed
19 attorney. Second, he complains his trial counsel was constitutionally ineffective at trial for a
20 myriad of reasons. He also asserts that the trial court erred by admitting the expert testimony
21 of a nurse, and that the prosecutor improperly commented on his failure to testify. Finally,
22 he appears to argue that the government withheld Brady material with respect to clothing the
23 victim wore on the night of the crime, and that the clothing was improperly admitted into
24 evidence.

25 **I.     Denial of Marsden Motion**

26 A California criminal defendant who is unhappy with his court-appointed counsel
27 must be permitted to state the reasons why he believes his counsel should be replaced.
28 People v. Marsden, 2 Cal.3d 118 (1970). Such procedure is known as a "Marsden" motion.

3

Not every conflict with his counsel, however, entitles a criminal defendant to new counsel. "The right to counsel does not guarantee 'a right to counsel with whom the accused has a meaningful attorney-client relationship.'" Daniels v Woodford, 428 F.3d 118, 1197 (9th Cir. 2005) (quoting Morris v. Slappy, 461 U.S. 1, 3-4 (1983)). A state court's denial of a Marsden motion amounts to a constitutional violation where there was an irreconcilable conflict between the defendant and counsel which prevented effective representation. Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc).

The California Supreme Court's summary denial of petitioner's claim that the trial court violated his Sixth Amendment right to counsel by denying his Marsden motion was not contrary to nor an unreasonable application of federal law. The trial court held a hearing on petitioner's motion, which was made shortly before trial. Petitioner complained that his counsel was failing to communicate with him, to obtain witnesses and evidence, to file motions, and to disclose a conflict of interest. He declared: "All of the above is a fundamental breakdown of my relationship and reaches well beyond disagreements. I, Jermaine McCord, cannot and will not cooperate with counsel." Petition Appendix, Exh. 1 at 3.

In response, defense counsel explained that he had performed a "vast amount of investigation" on petitioner's case, was not biased against petitioner, had interviewed all of the prosecution's witnesses, and had met with petitioner many times, although he knew petitioner wanted to confer with him more often, and he had filed several motions. Notwithstanding his counsel's response, petitioner reiterated that he was dissatisfied with his counsel's services and wanted time to retain counsel of his own choosing.

The trial court denied the Marsden motion. The court specifically found defense counsel was performing adequately and that any conflict between petitioner and his counsel was not so irreconcilable as to warrant the appointment of new counsel. The trial court also confirmed the trial date; however, he added that if petitioner retained private counsel in a day or so the court would entertain a motion to continue the trial, although he was not making

4

any promises. Petitioner never renewed his Marsden motion and never advised the court that he had retained private counsel.

Petitioner does not cite any case that suggests that his Sixth Amendment right to counsel was violated in these circumstances. The trial judge's findings were supported by the record, and, in particular, by defense counsel's testimony and petitioner's failure to raise the issue again. Petitioner's emphasis on the fact that his counsel had previously sought two trial continuances on the ground that counsel was unprepared is unavailing. This argument ignores that at the Marsden hearing defense counsel specifically stated that although he had sought continuances in the past, he was presently prepared for trial. The Marsden claim fails.

## II.  Ineffective Assistance of Counsel

Petitioner next alleges that his trial counsel was constitutionally ineffective in several respects. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate, first, that his counsel's representation fell below an objective standard of reasonableness, and second, that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U.S. 668, 687-89, 694 (1984). In reviewing defense counsel's performance, this Court "must be highly deferential and should make every effort to eliminate the distorting effects of hindsight." Pinholster v. Ayers, 525 F.3d 742, 757 (9th Cir. 2008) (internal quotation marks and citation omitted). Even if the Court concludes "that counsel performed deficiently, to obtain relief the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (internal quotation marks and citation omitted).

### A.  Suppression motion

Petitioner first complains that his trial counsel was constitutionally ineffective by failing to file a motion to suppress his February 23, 2003 taped interview with police on voluntariness grounds. This argument fails because he does not cite any evidence–or even make any argument–that suggests there was any good faith basis for challenging the

voluntariness of his statements. Counsel are not constitutionally obligated to move to suppress every potentially damaging statement made by a defendant.

### B.     Trial counsel engaged in limited or inadequate discovery

Petitioner claims trial counsel was ineffective because he (1) called no witnesses, (2) had his request to have defense investigator Ed Oasa sit in the courtroom during witness testimony denied because counsel had not properly noticed the prosecution regarding discovery, and (3) failed to retain any witnesses to defeat the DNA evidence. Petitioner has failed to show that any of this conduct was unreasonable.

First, to support a claim of ineffective assistance of counsel based on counsel's failure to call witnesses, a petitioner must, at a minimum, identify the witness or witnesses and show that the testimony would have been sufficient to create a reasonable doubt as to guilt, that is, show that the petitioner was prejudiced by the failure to call the witness. United States v. Berry, 814 F.2d 1406, 1409 (9th Cir.1987). Here, petitioner has not identified any potentially exculpatory witnesses.

Second, the trial court excluded the investigator from being present in the courtroom during the testimony of the victim and examining nurse because there had been a motion to exclude witnesses, the investigator was on the defendant's witness list, and defense counsel had not explained why the investigator needed to be present for the testimony.

Third, the record reflects that defense counsel had the DNA evidence tested by a private lab. Petitioner offers no evidence that there is any testimony an expert could have given that would have suggested that he was not guilty of the crimes charged. In his "Denial Of State Response To Petitioner's Writ Of Habeas Corpus" he asserts that the first DNA samples from the victim "revealed the parameters of a Hispanic male," but he does not cite to anything to support that statement. The Court cannot find that counsel was constitutionally ineffective for failing to investigate an issue when there is nothing in the record to support the petitioner's unadorned assertion that the issue existed. In any event, in support of his habeas petition he does not offer any expert testimony as to how the DNA evidence could

6

have been challenged in good faith; indeed, he does not even offer an argument as to how it could be challenged, especially given the testimony of the State's expert.

### C. Exculpatory witnesses to lack of rape trauma

Petitioner identifies several witnesses who allegedly spoke with the victim shortly after the crime and who would have refuted the claim that the victim suffered "rape trauma." Petitioner, however, does not offer any declarations from these witnesses, or even any evidence explaining the basis for petitioner's belief as to what these witnesses would have testified to if called. He has not met his habeas burden. See Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000).

### D. Failure to interview Shayla Gustafson

Next, petitioner argues his counsel was ineffective because he did not interview Shayla Gustafson, the person with whom the victim spoke on the telephone just prior to the kidnapping. He asserts that a report of Sergeant Sharp's telephonic interview with Ms. Gustafson may have been more exculpatory than appears. This claim fails because there is no evidence in the record as to whether defense counsel did or did not interview Ms. Gustafson and because petitioner fails to identify any exculpatory evidence to which Ms. Gustafson may have testified. It is not enough for petitioner to complain that Ms. Gustafson may have had exculpatory evidence; to meet his habeas burden he must present evidence that she in fact would have given such testimony.

### E. Evidence to refute the testimony of the examining nurse

The Sexual Assault Response Team (SART) nurse that examined the victim at the hospital testified that the victim's injuries were consistent with rape. Petitioner contends that his counsel was ineffective because he did not secure any independent medical testimony to challenge the nurse's findings and, in particular, to establish that the victim's injuries were from menstruation rather than rape. He also claims his counsel did not subpoena the victim's medical records.

The record reflects that–at a minimum–defense counsel received a copy of the victim's medical report in connection with the State's opposition to petitioner's motion to

7

dismiss. Moreover, petitioner offers no evidence that even remotely suggests that a competent attorney could have secured medical testimony suggesting that the victim's injuries were not the result of a rape. His bare assertion does not entitle him to habeas relief.

### F. Failure to investigate the victim

Petitioner alleges his counsel failed to investigate what the victim was doing on the night of the incident. He claims, for example: "[n]o evidence was brought out in trial that she may not have been at the School of the Blind as she states repeatedly that night." Petition at 7. The letter he cites for support, however (Petition Appendix, Exh. 4), establishes that she was at a function at the School for the Blind on the night of the rape. It similarly was not ineffective assistance for his counsel to fail to develop evidence that the victim was a student at Contra Costa College. The evidence petitioner cites states that at the time of the incident the victim had recently registered as a student; this evidence in no way supports petitioner's assertion that the victim willingly had sex with him near bleachers at the college or even that she was familiar with the area where she was raped. Also, the failure to investigate the victim's boyfriend is irrelevant given the DNA evidence. Moreover, the exhibits attached to the Petition demonstrate that petitioner did not deny having intercourse with the victim; instead he asserted that it was consensual.

### G. Failure to investigate the time of the incident

Petitioner next contends that his counsel could have defeated the kidnapping charge if he had developed the evidence as to when certain things happened, such as petitioner's cell phone call to Shayla Gustafson. The evidence he cites, however, was presented at trial and he does not explain how that timeline defeats any of his charges. The victim's explanation of events is consistent with the timeline.

### H. Defective defense strategy

Petitioner complains that his counsel wanted to attempt to explain the victim's injuries by interviewing petitioner's former girlfriends to determine if he has rough sex. Petitioner refused to cooperate with this strategy and again insists that his counsel should have obtained

evidence that the victim's injuries were caused by menstruation. Again, the record is absolutely devoid of any evidence supporting this theory.

He also regrets that counsel advised him not to take the stand. Given petitioner's criminal history, and counsel's strategy of demonstrating consent by highlighting the victim's inconsistent statements, this advice was not constitutionally defective. In any event, petitioner does not and cannot claim that he was not advised of his right to testify; he simply regrets that he followed his counsel's advice. Such regret is not a basis for habeas relief.

### I.   Failure to object to closing argument

During closing argument the prosecutor argued that there was no evidence suggesting that the victim had consensual sex with petitioner. Petitioner claims that his counsel should have objected that the prosecutor was improperly commenting on petitioner's failure to testify. The prosecutor's argument was a proper comment on the evidence and thus defense counsel's failure to object was not ineffective assistance. See Cook v. Schriro 538 F.3d 1000, 1020  (9th Cir. 2008) ("Prosecutors may comment on the failure of the defense to produce evidence to support an affirmative defense so long as it does not directly comment on the defendant's failure to testify.").

### J.   Failure to challenge victim's clothing

Finally, petitioner contends his counsel was deficient by failing to request a full evidentiary hearing regarding the admission of the victim's clothes. His counsel did object to the admission of the clothes collected at the hospital on the ground that the chain of custody had not been established, but was overruled. Petitioner's assertion that counsel should have objected that the bloody clothes were improperly offered to incite the jury that the victim suffered a serious bodily injury is not well-taken; the clothes were directly relevant to petitioner's claim of consensual sex.

### III.   Admission of SART Nurse as an Expert

Petitioner objected to the SART nurse testifying to her opinion that the victim's injuries were consistent with the victim's allegations. The trial court overruled the objection, finding that while she "is not a doctor and she can't make diagnosis, . . . she is still qualified

9

1  to express an opinion that her observations are consistent with forced intercourse." The court
2  permitted the nurse to testify "as an expert in the field of conducting sexual assault exams
3  and procedures" and, in particular, to testify that after her examination of the victim she
4  marked a box on her report that stated the "exam was consistent with history." She also
5  testified that by marking the box, she was "corroborating" the history with the exam.
6  Petitioner appears to contend that this testimony was improper because the nurse was not a
7  doctor. He also objects to the nurse's testimony that the victim was not menstruating.

Assuming, without deciding, that the trial judge should not have allowed the SART nurse to so testify, "evidence erroneously admitted warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process." Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). "Federal habeas courts do not review questions of state evidentiary law." Id. The federal courts' "habeas powers do not allow [the courts] to vacate a conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling on the admissibility of evidence." Id. (internal quotation marks and citation omitted). Petitioner does not cite any case that suggests that the admission of the nurse's testimony rises to the level of a violation of the right to a fundamentally fair trial. Accordingly, the state court's admission of this testimony was not contrary to nor an unreasonable application of federal law.

**IV.   Closing Argument**

Petitioner again asserts that his Fifth Amendment right to remain silent was violated when the prosecutor stated in closing argument that there was no evidence that the victim consented to intercourse with petitioner:

> But "Jane" knows, and "Jane" said she didn't know this man. She didn't agree to have sex with this man. She didn't agree to go to the college campus with this man, and you have no evidence that suggests otherwise. None.

RT 823-24. As explained above, this argument was not improper. See Cook v. Schriro 538 F.3d 1000, 1020 (9th Cir. 2008).

//

## V. The Victim's Clothing

Finally, petitioner challenges the admission of the clothes, including some blood-stained underwear and pants, the victim wore the night of the incident. The evidence at trial established that the clothes were collected at the hospital, stored in a police evidence bureau, and then sent to the crime lab 10 days later. Petitioner claims the clothes sent to the crime lab could not be the clothes worn by the victim and taken from her at the hospital because a pocket of the jacket contained a bus transfer dated January 19, 2003–three days after the incident. (Petition Appendix, Exh. 9). The bus transfer, however, is nearly illegible and cannot be read, by this Court at least, as reflecting a date of January 19. Moreover, petitioner offers no evidence to authenticate the bus transfer attached to his Petition. Petitioner's unsupported speculation fails.

Petitioner's assertion that the prosecution withheld Brady material concerning the clothing is not supported by the record. The prosecutor's closing argument with regard to the clothing was consistent with the evidence admitted at trial.

## VI. Discovery and Evidentiary Hearing

In his petition, petitioner briefly asserts that he needs discovery and an evidentiary hearing. Petitioner's request for discovery is denied. He has not identified what discovery he needs, how it would support his petition, and why he did not obtain it during his state habeas proceedings. He is also not entitled to an evidentiary hearing as the state court record disposes of his challenge to his conviction. See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998).

## CONCLUSION

For the reasons stated above the petition for habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: March 25, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE